Reversed and remanded.

Dr. Edwin L. RIPPY, as President of the Board of Trustees of the Dallas Independent School District, et al., Appellants,

v.

Hilda Ruth BORDERS, a minor, by her father and next friend, Louie Borders, Jr., et al., Appellees.

No. 16934.

United States Court of Appeals
Fifth Circuit.

Dec. 27, 1957.

A. J. Thuss, Dallas, Tex., for appellant.

U. Simpson Tate, W. J. Durham, Dallas, Tex., Thurgood Marshall, New York City, C. B. Bunkley, Jr., Dallas, Tex., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Upon the last appeal, this Court reversed the judgment of the district court dismissing the complaint, Bell v. Rippy, 146 F.Supp. 485, and directed the entry of a judgment restraining and enjoining the defendants from requiring segregation of the races in any school under their supervision from and after such time as might be necessary to make arrangements for admission of children to such schools on a racially nondiscriminatory basis with all deliberate speed as required by the decision in Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, and further directed the district court to retain jurisdiction of the cause for such further hearings and proceedings and the entry of such orders and judgments as might be necessary or appropriate to require compliance with such judgment.[1] Borders v. Rippy, 5 Cir., 1957, 247 F.2d 268.

After he had received the opinion of this Court, but before our mandate had issued, the District Judge called counsel before him and made a statement "as to his determination", in part as follows:

"This Court is now called upon to issue an order in accordance with the Circuit Court's decisions and directions. That order not only unsettles the tranquility of the Dallas Public Schools which has heretofore existed in a proud form for many years under which both the colored and the white pupils have had equal school facilities and splendid teachers, but it also takes from the Independent School District a large necessary amount of State funds if and when desegregation is ordered.

"It is difficult, gentlemen, for me to approve this order, but this is a land of the law and it is my duty to do what I am ordered to do by the higher Court, and I therefore ask you gentlemen of counsel to prepare an order in accordance with the ruling of the United States Circuit Court of Appeals for this Circuit, as outlined in its opinion upon the original case and upon the motion for rehearing, and I should like to have you gentlemen of counsel to prepare the order to be approved by each of you as to form, ordering integration to be permitted at the coming mid-winter term of the schools and not before that time.

---

1. In pertinent part the mandate of this Court read:

"On consideration whereof, It is now here ordered and adjudged by this Court that the judgment of the District Court is reversed and the cause is remanded with directions to the District Court to enter judgment restraining and enjoining the defendants, Board of Trustees of the Dallas Independent School District, Dallas County, Texas, and the President and members thereof, together with the other defendants in this case, their and each of their agents, servants, employees and successors in office and those in concert with them who shall receive notice of such judgment, from requiring segregation of the races in any school under their supervision, from and after such time as may be necessary to make arrangements for admission of children to such schools on a racially nondiscriminatory basis with all deliberate speed as required by the decision of the Supreme Court of the United States in Brown vs. Board of Education of Topeka, 349 U.S. 294 [75 S.Ct. 753, 99 L. Ed. 1083], and retaining jurisdiction of the cause for such further hearings and proceedings and the entry of such orders and judgments as may be necessary or appropriate to require compliance with such judgment."

Let your order contain the practical portion of the School Board's division of districts and institution of schools."

Without any further hearing, without any evidence other than that appearing in the record which led to our reversal, and without inviting suggestions or arguments from counsel on anything save as scriveners in the drafting of an order to effectuate his prior determinations, the District Judge thus picked the mid-winter school term of 1957–1958 as the time to start system-wide desegregation.

After our mandate had been received, but still without any further hearing, and professedly upon the decision and order of this Court and the record theretofore made in the cause, the District Judge restrained and enjoined the defendants "from requiring *or permitting segregation of the races* in any school under their supervision, beginning and not before the mid-Winter school term of 1957–1958" (Emphasis ours).

Upon the same record, the District Judge had theretofore expressed his opinion that: "I think that the testimony shows completely that the school authorities here in charge of this Independent School District are certainly doing their very best to comply with the ruling of the Supreme Court of the United States." This Court in turn had said that: "We do not impugn the good faith of the Board, of the Superintendent, or of any of the school authorities." (247 F.2d 268, 272.)[2]

We have emphasized the words *"or permitting segregation of the races"* in the district court's order because that expression might indicate a serious misconception of the applicable law and of the mandate of this Court. Our mandate (footnote 1, supra) had been carefully limited so as to direct the entry of a judgment restraining and enjoining the defendants "from *requiring segregation of the races* in any school under their supervision" (emphasis supplied). Likewise in our opinion, we had pointed out that it is only *racially discriminatory* segregation in the public schools which is forbidden by the Constitution.[3] That point was emphasized in the Arlington, Virginia Case[4] in which Chief Judge

2. The District Judge has sent to the Clerk of this Court a copy of his letter to appellants' counsel, the body of which reads as follows:

"I thank you for the copy of the brief which you have filed with the Circuit Court of Appeals in re Rippy et al vs. Borders et al.

"It is somewhat surprising to me that you continue to contend that the court made a 'judicial guess' in fixing the mid-winter term as the time for integration.

"I asked both you and counsel for the other side, when the mandate was received from the Circuit Court of Appeals, to prepare an order, and some little discussion followed, and then you being unable to agree upon an order I fixed the order and the time because the court ordered me to see that integration took place at 'deliberate speed.'

"I had heard testimony several times which told of the number of students, both white and colored, and knew the number of the plaintiffs who were called —27, and I thought that five months was ample time and would be in accordance with the order of the Circuit Court."

While that letter reflects an attitude of the District Judge not shown in his two statements which have been quoted, it can hardly serve to change the record before this Court. Further, by its reference to twenty-seven plaintiffs, it apparently ignores the fact that this is a class action in which the district court had ordered en masse desegregation having no relation to the number of named plaintiffs.

3. "The equal protection and due process clauses of the fourteenth amendment do not affirmatively command integration, but they do forbid any state action requiring segregation on account of their race or color of children in the public schools. Avery v. Wichita Falls Independent School District, 5 Cir., 1957, 241 F.2d 230, 233. Pupils may, of course, be separated according to their degree of advancement or retardation, their ability to learn, on account of their health, or for any other legitimate reason, but each child is entitled to be treated as an individual without regard to his race or color." Borders v. Rippy, 5 Cir., 247 F.2d 268, 271.

4. Thompson v. County School Board of Arlington County, E.D.Va., 1956, 144 F. Supp. 239, 240, affirmed School Board of City of Charlottesville, Va. v. Allen, 4 Cir. 1956, 240 F.2d 59, 62.

Parker of the Fourth Circuit quoted with approval the apt language of District Judge Bryan:

> " 'It must be remembered that the decisions of the Supreme Court of the United States in Brown v. Board of Education, 1954 and 1955, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] and 349 U.S. 294, [75 S.Ct. 753, 99 L.Ed. 1083] do not compel the mixing of the different races in the public schools. No general reshuffling of the pupils in any school system has been commanded. The order of the Court is simply that no child shall be denied admission to a school on the basis of race or color. Indeed, just so a child is not through any form of compulsion or pressure required to stay in a certain school, or denied transfer to another school, because of his race or color, the school heads may allow the pupil, whether white or Negro, to go to the same school as he would have attended in the absence of the ruling of the Supreme Court. Consequently, compliance with that ruling may well not necessitate such extensive changes in the school system as some anticipate.' "

School Board of City of Charlottesville, Va., v. Allen, 4 Cir., 1956, 240 F.2d 59, 62.

In our opinion on the last appeal, we noted that the then appellants prayed for no more stringent order than one "requiring appellees to desegregate the schools under their jurisdiction 'with all deliberate speed' " (247 F.2d 272). Accordingly, this Court's mandate fixed no date for desegregation more specific than "from and after such time as may be necessary to make arrangements for admission of children to such schools on a racially nondiscriminatory basis with all deliberate speed as required by the decision in Brown v. Board of Education of Topeka, 349 U.S. 294 [75 S.Ct. 753, 99 L.Ed. 1083]." (Footnote 1, supra.) The authority to administer the public schools is vested in the appellants, the Board and the Superintendent, and, of course, they are the ones required to make the necessary arrangements referred to in the judgment to be entered by the district court as directed by our mandate. If the school authorities fail promptly to meet their primary responsibility to the satisfaction of the plaintiffs, appellees, and others similarly situated, then the duty will devolve upon the district court to hold a hearing to decide whether they have done so and, if necessary, to proceed further so as actually and effectively to require compliance. In the performance of that duty, the district court must exercise *its own* judgment and discretion in accordance with the applicable principles of law set forth in Brown v. Board of Education of Topeka, supra. It seems to us that the district court did not do this in entering the judgment appealed from, but apparently considered itself bound to enter that judgment by the mandate of this court. That was not in accord with the mandate nor with the order of responsibility (first the school authorities, then the local district court, and lastly the appellate courts) prescribed in Brown v. Board of Education of Topeka, supra:

> "Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal." (349 U.S. at page 299, 75 S.Ct. at page 756.)

We thought, and still think, that this Court's mandate made it clear that before a more specific date should be fixed and before any orders or judgments should be entered to require compliance with the judgment directed in that man-

date, the school authorities should be accorded a reasonable further opportunity promptly to meet their primary responsibility in the premises, and then if the plaintiffs, or others similarly situated, should claim that the school authorities have failed in any respect to perform their duty, there should be a full and fair hearing in which evidence may be offered by any and all parties, and further that the Court should retain jurisdiction to require compliance with its judgment.

The judgment of the district court is therefore reversed and the cause remanded with directions to enter a judgment in accordance with the mandate of this Court issued on September 7, 1957 and in accordance with this opinion, and to retain jurisdiction for such further hearings and proceedings and the entry of such orders and judgments as may be necessary or appropriate to require compliance with such judgment. In view of the reversal on appeal, the petition for mandamus is not necessary and leave to file said petition is denied.

Reversed with directions. Leave to file petition for mandamus denied.