William M. HOLLAND, Jr., infant, by William M. Holland, Sr., his father and next friend, Appellant,

v.

The BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY, FLORIDA, et al., Appellees.

No. 16897.

United States Court of Appeals Fifth Circuit.

Aug. 26, 1958.

F. Malcolm Cunningham, I. C. Smith, West Palm Beach, Fla., for appellant.

W. O. Mehrtens, Miami, Fla. C. D. Blackwell, West Palm Beach, Fla., M. L. Mershon, Miami, Fla., Evans, Mershon, Sawyer, Johnston & Simmons, Miami, Fla., of counsel, for appellees.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

A child, by his father as next friend, complains that he and other Negro children are segregated in the public schools of Palm Beach County, Florida, solely on the basis of race, contrary to the constitution of the United States as construed in the School Segregation Cases.[1]

On May 31, 1956, the child's parents petitioned the County Board of Public Instruction to organize the school districts so that, commencing with the next school term, the child would be permitted to attend the public schools under their jurisdiction on a nonsegregated basis. No such action was taken. When school reopened on August 30, 1956, the child was presented for enrollment at a school attended by white pupils only, but which lay outside the school district in which he and his parents resided. He was denied admittance. The district court held that such denial was because he resided in another school district and not because of his color. Full findings of fact were made by the district court from which it concluded:

> "The assignment of the plaintiff does not deny him any constitutional right, nor was he discriminated against by reason of that assignment, or the School Board's refusal to permit him to transfer to another more distant school."

The population of Palm Beach County is divided approximately one third Negro, and two thirds white. In the 1956–57 school term 34,920 children were enrolled in its schools. Negroes and whites attended different schools. The school district in which the plaintiff resides was created originally for tax purposes in 1912. It is designated by city ordinance as a Negro residential area, and the constitutionality of that ordinance is not directly attacked. The school district is bounded on one side by a railroad track and freight depot and on the other three sides by a white residential area which constitutes a separate school district.

The plaintiff charged that the school districts are "gerrymandered." The district court found otherwise. If we were to review that finding specifical-

1. Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

ly, we would have to consider it in the light of the principle announced in several of our decisions [2] that the Fourteenth Amendment does not speak in positive terms to command integration, but negatively, to prohibit governmentally enforced segregation.

■ The plaintiff charged also that the Florida Pupil Assignment Law [3] was being applied discriminatorily so as to maintain segregation. The infant plaintiff was entitled to be treated simply as another school child without regard to his race or color, and the fact that he was a Negro did not vest him with a right to attend a school located in a district in which he did not reside when that geographical rule was being applied to all children alike.

■■ That the plaintiff was ineligible to attend the school to which he applied would not, however, excuse a failure to provide nonsegregated schools. It is not necessary to review piecemeal the district court's findings of fact and conclusions of law, for the record as a whole clearly reveals the basic fact that, by whatever means accomplished, a completely segregated public school system was and is being maintained and enforced. No doubt that fact is well known to all of the citizens of the County, and the courts simply cannot blot it out of their sight. In the light of compulsory residential segregation of the races by city ordinance, it is wholly unrealistic to assume that the complete segregation existing in the public schools is either voluntary or the incidental result of valid rules not based on race.

A three-judge district court recently held that the Alabama School Placement Law is not unconstitutional *on its face*,[4] but concluded that ruling with a clear note of warning:

"All that has been said in this present opinion must be limited to the constitutionality of the law *upon its face*. The School Placement law furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color. We must presume that it will be so administered. If not, in some future proceeding it is possible that it may be declared unconstitutional in its application. The responsibility rests primarily upon the local school boards, but ultimately upon all of the people of the State."

Nothing said in that opinion conflicts in any way with this Court's earlier statement relative to the Florida Pupil Assignment Law:

"* * * Neither that nor any other law can justify a violation of the Constitution of the United States by the requirement of racial segregation in the public schools." Gibson v. Board of Public Instruction of Dade County, 5 Cir., 1957, 246 F.2d 913, 914.

■ So long as the appellant and other Negro children are segregated in the public schools solely on the basis of race, they and each of them (including the appellant) are being deprived of their rights under the Constitution as construed by the Supreme Court. There is no need, at this time, to consider separately the charges of "gerrymandering," or of unconstitutionality of the Florida Pupil Assignment Law either on its face or in its application. It is enough to observe that no means of any description can be legally employed to deprive the appellant of his rights under the Constitution.

2. E. g., Borders v. Rippy, 5 Cir., 1957, 247 F.2d 286, 271; Avery v. Wichita Falls Independent School District, 5 Cir., 1957, 241 F.2d 230, 233.

3. Florida Statutes Annotated, § 230.232, Laws 1956, Extraordinary Session, Chapter 31380.

4. Shuttlesworth v. Birmingham Board of Education, D.C.N.D.Ala., 162 F.Supp. 372, 384.

The Court, being in some doubt as to the proper disposition of this case, called for additional briefs by the parties in answer to the following queries:

"1. Should the Court treat the present case as a class action or as one solely on behalf of the infant appellant?

"2. Are there any precedents for ordering general desegregation of the public schools, or for granting relief to a segregated class in cases which were not filed as class actions?

"3. Does the Court have before it the necessary or indispensable parties for it to consider and decide whether or not such relief should be granted?

"4. Assuming jurisdiction to exist, should the district court be required to proceed with general desegregation of the public schools, either county-wide or as between Pleasant City and Northboro Schools, upon the complaint of the plaintiff-appellant alone?

"5. Should the Court confine its consideration of the present case to the question of whether the plaintiff-appellant was wrongfully denied admission to Northboro Schools?"

Those briefs have now been furnished. In addition, some fifty parents of some 189 Negro children who claim that they are entitled to or attending the public schools of Palm Beach County, Florida, have moved to intervene as appellants, and the appellees have vigorously objected to and opposed such motions to intervene. Intervention in this Court of Appeals should, we think, be denied.[5] Our denial of leave to intervene here, however, is without prejudice to the movants becoming additional parties plaintiff in the District Court after remand.

The present case resembles, but is not now pleaded as, a class action. Upon remand, the complaint may be, and probably will be, amended so as to meet the requirements of Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. Without such amendment, we think that the District Court has jurisdiction to enter a declaratory judgment and to relieve the plaintiff from a deprivation of his rights under the Constitution as construed by the Supreme Court. With appropriate amendment to the complaint, which should be permitted, the case may proceed in accordance with the practice in the usual actions of this kind.

The primary responsibility rests on the County Board of Public Instruction to make "a prompt and reasonable start," and then proceed to "a good faith compliance at the earliest practicable date" with the Constitution as construed by the Supreme Court.[6] "During this period of transition," the district court must retain jurisdiction to ascertain and to require good faith compliance.[7]

The judgment of dismissal is therefore reversed and the cause remanded.

Reversed and remanded.

5. Morin v. City of Stuart, 5 Cir., 1939, 112 F.2d 585; Stallings v. Conn, 5 Cir., 1934, 74 F.2d 189, 191; 4 Moore's Federal Practice, 2d ed., page 99; 39 Am.Jur. p. 943.

6. See Borders v. Rippy, 5 Cir., 1957, 247 F.2d 268, 271, 272; Rippy v. Borders, 5 Cir., 1957, 250 F.2d 690, 693.

7. Borders v. Rippy, supra; Avery v. Wichita Falls Independent School District, 5 Cir., 1957, 241 F.2d 230, 234, 235.