**Sandra Craig BOSON, et al., Appellants,**

v.

**Dr. Edwin L. RIPPY, as President of the Board of Trustees of the Dallas Independent School District, Dallas County, Texas, et al., Appellees.**

**No. 18046.**

United States Court of Appeals
Fifth Circuit.

March 11, 1960.

Dissenting Opinion March 15, 1960.

Rehearing Denied April 8, 1960.

C. B. Bunkley, Jr., Dallas, Tex., Constance Baker Motley, Thurgood Marshall, New York City, William J. Durham, Dallas, Tex., Elwood H. Chisolm, New York City, of counsel, for appellants.

Royal H. Brin, Jr., Henry W. Strasburger, Dallas, Tex., Strasburger, Price, Kelton, Miller & Martin, Dallas, Tex., of counsel, for appellees.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

PER CURIAM.

This class action seeking admission of Negro children to the Dallas public schools on a nonracial basis was commenced in July 1955. Its history may be traced through many reported opinions on various stages and phases of the litigation, e. g. Bell v. Rippy, D.C.N.D. Tex.1955, 133 F.Supp. 811; Brown v. Rippy, 5 Cir., 1956, 233 F.2d 796; certiorari denied Oct. 22, 1956, 352 U.S. 878, 77 S.Ct. 99, 1 L.Ed.2d 79; Bell v. Rippy, D.C.N.D.Tex.1956, 146 F.Supp. 485; Borders v. Rippy, 5 Cir., 1957, 247 F.2d 268; Rippy v. Borders, 5 Cir., 1957, 250 F.2d 690; see also Dallas Independent School District v. Edgar, 5 Cir., 1958, 255 F.2d 455.

The present phase begins with the entry by the District Court on April 16th, 1958, of a final judgment in part as follows:

"It is, Therefore, the Order, Judgment and Decree of the Court that the Defendant Independent School District of Dallas, its Board of Education, a Corporation, and its agents, its servants, its employees, their successors in office and those in concert with them, who shall receive notice of this order, be, and the same are hereby, restrained and enjoined from requiring and permitting segregation of the races in any school under their supervision, from and after such time as may be necessary to make arrangements for admission of children to such schools on a racially non-discriminatory basis with all deliberate speed, as required by the decision of the Supreme Court in Brown vs. Board of Education of Topeka, 349 U.S. 294 [75 S.Ct. 753, 99 L.Ed. 1083], and retaining jurisdiction of the cause for such further hearings and proceedings and the entry of such orders and judgments as may be necessary or appropriate to require compliance with such judgment."

On May 20, 1959, about thirteen months after the entry of said judgment, the plaintiffs filed their "Motion for Further Relief," which concluded with the following prayer:

"Wherefore, plaintiffs respectfully pray the Court to enter an order directing and requiring defendants to comply forthwith with this Court's judgment and orders issued April 16, 1958, by immediately operating all schools under their supervision in the Dallas Independent School District on a nonracial, nondiscriminatory basis; and that defendants be further directed to now permit plaintiffs and all Negro minors similarly situated to enter, matriculate and study in schools under their supervision without regard to race and color.

"Plaintiffs also pray the Court to allow them their costs and for such other and further relief, judgments and decrees as may appear equitable and just in the premises."

The defendants replied to the motion, and prayed, "that this Honorable Court overrule and deny Plaintiffs' said Motion."

The hearing on the motion and answer was held on July 30, 1959, at which time counsel for the respective parties made opening statements as follows:

"Mr. Durham:

"If the Court will permit me I can state it very shortly.

"The plaintiffs filed suit some time ago, and Your Honor knows the history of it.

"The substance of the motion is that the Dallas Independent School District, in face of the April 16th judgment, is still being operated on a racial segregated basis, and we ask the Court to enter a decree directing the defendants to comply with that decree.

"The defendants have filed an answer to our motion, and in Allegation 10 they admit that the School District is still being operated on a racial segregated basis in the face of the April 16th judgment; therefore, on the face of the record there appears to be no substantial controversy to the main issue that the school is being operated on a racial segregated basis. We, therefore, believe that the case at that point, that a decree should be rendered on the face of the record directing the School Board to bring in a plan of desegregation within a reasonable time, which would provide for desegregation beginning September, 1960.

"This would alleviate the fear of defendants that stress reference to that being impractical to do it September, 1959, or in the middle of the term.

"Therefore, we believe, on the face of the record, there being no substantial controversy, the plaintiff would not be required to offer any evidence on the motion.

"Mr. Strasburger:

"If your Honor please, we respectfully disagree with opposing counsel. As we view the issue today it is simply whether or not we have complied with the former order, that we move with all deliberate speed. We feel that we have moved with all deliberate speed, and will continue to do so.

"Our pleadings join issue with them, that they are not entitled to the relief they pray for today, that they are in too big a hurry, that the best interests of all the children and all the community demands that we continue as we have continued in the past and doing our dead level best to stay within the Constitution and laws, and within the rulings of the Court, not only of the United States but of the State of Texas."

The Court proceeded to hear all of the testimony offered by the parties, and at the conclusion of the hearing delivered a long oral opinion which comprises thirteen pages of the printed record and concludes as follows:

"From the evidence before us, and from the statement of counsel for the plaintiffs, it is not urged before September 1960. Just what problem will be confronting you in 1960, or by the fall of 1960, the Court can hardly foresee. I can only say to you, put your house in order for integration, for it is ahead of you.

"We will not name any date, nor will we write any order, except that we have not reached the time, to which counsel for plaintiff agrees, that integration can take place this year.

"I think an appropriate order will be that the School Board be instructed to further study this question, and that some definite action be taken, perhaps toward holding this election or doing other things, sometime next spring, but we cannot say definitely whether or not it will take place at any particular time, day, month or year, we don't know, because we don't know what tomorrow may bring forth."

The plaintiffs then moved " * * * that the Court enter an order disposing of Plaintiffs' motion and for such other and further relief as they may be entitled to in the premises."

In response to that motion, the Court on August 4, 1959, entered its order in part as follows:

"That the prayer of the Plaintiffs for an order directing and requiring Defendants to immediately desegregate is denied; but this Court retains jurisdiction of this cause for

such further hearings and proceedings and the entry of such orders and judgments as might be necessary or appropriate to require compliance with this Order as well as the judgment of the Appellate Courts, and this hearing is recessed for the time being to be resumed on the first Monday in April, A. D. 1960."

On August 12th, 1959, the plaintiffs filed their notice of appeal " * * * from the decree and final judgment entered in this action on the 4th day of August, 1959, denying Plaintiffs' motion for further relief praying for a judgment and decree of the Court directing and requiring the Defendants to immediately desegregate the schools in the Dallas Independent School District."

■ The order of August 4, 1959, refuses to modify an injunction, and this Court, under 28 U.S.C.A. § 1292(a) (1), has jurisdiction of an appeal from that order. Compare Allen v. County School Board of Prince Edward County, Va., 4 Cir., 1957, 249 F.2d 462.

■ The language which we have quoted from the notice of appeal simply describes the judgment or order from which the appeal is prosecuted and was obviously not intended to limit the scope of the appeal, and does not have that effect.

■ Upon consideration of the evidence, and of the entire record, we find no error in the order appealed from except an error of omission. The Court should have required the defendants to "make a prompt and reasonable start toward full compliance" with its original injunction order of April 16th, 1958, and to that end, it should have required the defendants to submit a plan for effectuating a transition to a racially nondiscriminatory school system in time for such plan to be considered and ruled on by the Court on the date to which the hearing was recessed, viz., the first Monday in April, 1960. See Brown v. Board of Education, 1955, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083. That date

being almost at hand, the order of the district court is modified so as to require the defendants to "make a prompt and reasonable start toward full compliance" with its injunction order of April 16th, 1958, and to that end, within thirty days from the date on which the present judgment of this Court of Appeals becomes final, to submit a plan for effectuating a transition to a racially nondiscriminatory school system; and further that the District Court, within thirty days after the submission of such plan, hold a full hearing upon the plan so submitted and on any objections which may be filed thereto. As so modified the judgment or order of the District Court is affirmed.

Modified and affirmed.

CAMERON, Circuit Judge, dissents.

CAMERON, Circuit Judge (dissenting).

For several reasons I cannot subscribe to the result announced and the reasons given in the per curiam opinion in which the majority has concurred.

### I.

I do not think the case is legally before us. We have no jurisdiction, except that conferred by statute. The per curiam opinion rests jurisdiction upon 28 U.S.C.A. § 1292(a) (1) providing for appeals from interlocutory orders of district courts "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions * * *" This appeal does not, in my opinion, come within the ambit of that statute.

The proceeding which led to the order appealed from was a "motion for further relief" filed by appellants May 20, 1959. The only specific relief prayed for was "an order directing and requiring defendants to comply forthwith with this Court's judgment and orders issued April 16, 1958, by immediately operating all schools under their supervision * * * on a nonracial, nondiscriminatory basis; and that defendants be fur-

ther directed to now permit plaintiffs and all other Negro minors similarly situated to enter, matriculate and study in schools under their supervision without regard to race and color." The appellants abandoned the prayer for immediate desegregation at the very outset of the hearing on the motion of May 20, this being the statement of their counsel: "We, therefore, believe that the case at that point, that a decree should be rendered on the face of the record directing the School Board to bring in a plan of desegregation within a reasonable time, which would provide for desegregation beginning September, 1960. This would alleviate the fear of defendants that [sic] stress reference to that being impractical to do it September, 1959 or in the middle of the term."

All of the discussion had between the attorneys and all of the questions to witnesses related, not to the prayer for immediate desegregation, but to a plan for desegregation sometime in the future. In the order entered by the court at the conclusion of the hearing, the court stated: "Plaintiffs stated in open court that desegregation should not be put into effect this year."

Based upon the statements of appellants' attorneys and upon this finding, the court ordered: "That the prayer of the plaintiffs for an order directing and requiring defendants to immediately desegregate is denied." Appellants have never taken the position that this portion of the order was erroneous, but, as stated, the order was entered after appellants had abandoned that contention and had made known their position to the court below.

The appeal was taken, therefore, solely from the residue of the order, which reads:

"* * * but this Court retains jurisdiction of this cause for such further hearings and proceedings and the entry of such orders and judgments as might be necessary or appropriate to require compliance with this order as well as the judgment of the appellate courts, and this hearing is recessed for the time being to be resumed on the first Monday in April, A. D. 1960."

The only appeal before us, therefore, relates, not to any order "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions." There is presented to us here nothing but a matter of timing. No request was made by appellants that the recess provided for in the order be for a shorter period, or that the case be set for hearing on the only remaining issue at any other time than that fixed by the court. After appellants had abandoned the prayer for immediate integration, there was nothing remaining but the oral statement of the attorney that he *believed* that an order should be entered *directing* the School Board to bring in a plan of desegregation within a reasonable time. Assuming that this statement should be interpreted as a motion, the Rules of Procedure [1] provide for notice and hearing of any motion.

We should not, in my opinion, concern ourselves with the setting of the docket of the district courts or other minutiae of trials. In any event, if appellants were dissatisfied with the April setting, the point should have been raised when the court stated orally that it was passing the remaining question before it until April; or by a motion to the trial court requesting an earlier setting, followed by petition to us for leave to proceed by mandamus. No such action was taken or motion filed below and no such action has been taken before us. If it had, we should, in my opinion, meet such an effort with language similar to that used by the First Circuit:[2]

---

1. See, e. g., Rules 6, 7 and 12, F.R.Civ. Proc., 28 U.S.C.A.

2. In re Sylvania Electric Products, Inc., 1 Cir., 1955, 220 F.2d 423, 424, quoting from In re Josephson, 1 Cir., 1954, 218 F.2d 174, 177.

" * * * We do not think that 28 U.S.C. § 1651 grants us a general roving commission to supervise the administration of justice in the federal district courts within our circuit, and in particular to review by a writ of mandamus any unappealable order which we believe should be immediately reviewable in the interest of justice."

A final judgment is the general prerequisite for an appeal and an interlocutory appeal is definitely the exception. Moore's Commentary on the United States Judicial Code, page 481, et seq., and see Cobbledick v. United States, 1940, 309 U.S. 323, 324, 60 S.Ct. 540, 84 L.Ed. 783; and Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 185, 75 S.Ct. 249, 99 L.Ed. 233.

## II.

The "Implementing Decision" of the Supreme Court, Brown v. Board of Education of Topeka, 349 U.S. 294, 299, 75 S.Ct. 753, 756, 99 L.Ed. 1083, contains this language:

"Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal. Accordingly, we believe it appropriate to remand the cases to those courts."

The cases were sent back to the district courts sitting where the problems arose, not to the Courts of Appeal. It was recognized that the local boards had problems which were unique, and experience has shown that these problems are as complex as they are local. The judges upon whom the Supreme Court cast the onus of collaborating with the local school boards were those situated in the locales where the problems existed and who logically had a good grasp of those problems.

What the majority does here transgresses, in my opinion, against policies which the Supreme Court thought important and which reason and common sense make compellingly so. I do not think we ought to interfere with the progress of the School Board and the local district judge in working out these local problems. They have an intimate knowledge of the problems and are in best position to work them out. The Judges who constitute this Court have lived their lives at points far distant from the locale of these problems and could not possibly be in as good position to solve them as the district judge who has spent his life with them. It is our duty, as it seems to me, to leave their solution to these local citizens, trusting their wisdom and their good faith. This record does not, in my judgment, present any reason to question either.

The Supreme Court thought that the local judges could "best perform this judicial appraisal." They can do so after considering, in the light of their own experience, the evidence of what the problems consist of and what the School Board has done and is doing to cope with them.

The hearing in the court below consisted of the testimony of three witnesses, the president of the School Board, the superintendent of schools, and the assistant superintendent. From them the court below learned the attitude of the appellees and the school officials generally towards compliance with the orders of the courts, the studies which had been made [3] and the complexity of the problems involved in dealing with 119,000

---

3. Including the plans put in force in the Cities of Louisville, Nashville, Washington, Little Rock, St. Louis, and Baltimore and their experiences under them.

school children with 3,800 teachers, occupying 134 school buildings.

After hearing all of the evidence the court below stated in its oral opinion: "The only question is, how soon must it [i. e. integration] be. From the evidence before us, and from the statement of counsel for the plaintiffs, it is not urged before September, 1960. Just what problem will be confronting you in 1960, or by the fall of 1960, the Court can hardly foresee. I can only say to you, put your house in order for integration, for it is ahead of you. * * *"

Four days later, pursuant to motion of the appellants, and without any objection to the proposed April setting, the court entered its written findings and order in which it stated in part:

"The Court is of the opinion and so finds * * * that the defendants have not only made a prompt and reasonable start but are also proceeding toward a good faith compliance at the earliest practicable date with the May 17, 1954 ruling of the Supreme Court and the judgments of the United States Court of Appeals, Fifth Circuit, as well as the judgments and orders of this Court entered pursuant thereto; and the defendants' actions constitute good faith implementation of all governing constitutional principles; that the defendants have diligently studied the problems involved and the methods and plans used elsewhere in a genuine effort to avoid the strife and violence which had taken place in some areas * * *; * * * and that some further time should elapse before the Court decides on a definite date for desegregation in order that new conditions, developments and evidence might be considered; * * *."

The court thereupon recessed the hearing until the first Monday of April, 1960, after appellants had made no objection to that date proposed orally by the court and had filed nothing in the court below in the way of a request for an earlier hearing.

As stated, the only evidence in the record was given by the school officials, and from that and the statement of counsel for the appellees, the court made its findings. It did not deny any request urged by the appellants and did not refuse anything even suggested by them. The court below was vested with discretion, and it has exercised that discretion. I do not think it lies within the proper powers of this Court to set that discretion aside under the circumstances of this case; and if we had the power to do it, I do not think the evidence would justify our substituting our judgment for that of the court below.

III.

(a) In their defensive pleadings to the appellants' motion for further relief upon which the case was heard by the court below, appellees pled specially the act of the 1957 session of the Texas Legislature, c. 283, approved by the Governor May 23, 1957, and effective ninety days thereafter. Among other things, they said with respect to said legislative enactment:

"* * * they allege that they have and are now pursuing all of their legal remedies with reference to an Act of the 1957 Texas Legislature * * * as suggested or directed in the opinion of the United States Court of Appeals, Fifth Circuit, as set out in 247 F.2d 268, in that they filed an appropriate action in the federal courts which was dismissed for want of jurisdiction of which this Honorable Court can take judicial notice; and they filed a similar suit thereafter in the state court of Texas and an appeal from the decision of the * * * District Court of Dallas County, Texas, is now pending in the Court of Civil Appeals for the State of Texas, Eleventh District at Eastland, Texas [Dallas Independent School Dist. v. Edgar, 328 S.W.2d 201]. * * *

"Further specially answering, defendants say that they had not thought that they had the power or

right or that it would be appropriate for them to initiate the steps necessary to an election with reference to the 1957 Texas Legislature, but that if either this Honorable Court or the plaintiffs desire it, they will undertake to make such necessary steps."

The first reference in the foregoing quotation is to the statement of this Court upon petition for rehearing in a former decision of this case, Borders v. Rippy, 5 Cir., July 23, 1957, 247 F.2d 268, 272, that the appellees here "are not without their legal remedies." Pursuant to their construction of the quoted language of the decision of this Court, appellees promptly instituted an action in the United States District Court praying for a declaration of their rights under the two Texas statutes. This Court affirmed the action of the district court declining to assume jurisdiction, both because the complaint disclosed no federal jurisdiction and it failed to state a claim upon which relief could be granted.[4] In that case, we quoted the titles to the two Texas statutes whose meaning, validity and application the appellees sought to have declared. One of the statutes, Article 2900a of Title 49, Vernon's Texas Civil Statutes, 1959 pocket part p. 204, makes it illegal for a board of trustees to abolish the dual public school system the Texas Legislature had established and provides that, if the Act shall be violated, the school district shall be ineligible for accreditation and for the receipt of any Foundation Program funds, and that the individuals violating the Act shall be guilty of a misdemeanor and subject to fine.

The second Act of the Texas Legislature, the title of which was quoted by this Court (255 F.2d at page 456), Article 2901a, 1959 pocket part, Vernon's Annotated Civil Statutes of the State of Texas, p. 205 et seq., deals elaborately with the assignment of pupils and the transfer of pupils, teachers and funds by local school boards, in connection with which cf. Shuttlesworth v. Birmingham Board of Education, U.S.D.C.N.Dist.Ala. 1958, 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145. Neither of these statutes was involved in the case of Borders v. Rippy and neither was in existence when, on Dec. 26, 1956, the district court entered the judgment in that case, which this Court dealt with in its decision of July 23, 1957, 5 Cir., 247 F.2d 268. Since in the decision of that case we were testing the correctness of the trial court's ruling as based upon the record then before us, neither of these statutes was ever properly before this Court.

The statutes are, in my opinion, if valid, binding upon the appellees here, and if their constitutionality is questioned, the court below should stay its hand while that question is dealt with in the Texas courts. Empire Pictures Distributing Co. v. City of Fort Worth, 5 Cir., 1960, 273 F.2d 529, and the Supreme Court cases there cited and discussed. If it is not possible to conduct such a hearing in the state courts of Texas, the questions raised by the appellees based upon the statutes will still remain in the case and, in my opinion, the appellees are entitled to have them resolved before they are required to take any step in this litigation which may be in derogation of said statutes.

(b) As stated above, Article 2900a of Vernon's Annotated Civil Statutes of Texas was called to the attention of this Court by Petition for Rehearing filed by the appellees in Borders v. Rippy, supra, and this Court said with respect to it (247 F.2d 272):

"That Act, of course, cannot operate to relieve the members of this Court of their sworn duty to support the Constitution of the United States, the same duty which rests upon the members of the several state legislatures and all executive and judicial officers of the several states. We cannot assume that that solemn sworn duty will be breached

---

4. Dallas Independent School District v. Edgar, Commissioner of Education, 5 Cir., May 23, 1958, 255 F.2d 455, 456.

by any officer, state or federal. If, however, it should be, then the Board of Trustees of the School District and the persons carrying out the order to be issued by the district court are not without their legal remedies."

The record in that case reveals that neither party had relied upon nor mentioned the statute in the court below or in the presentation of the case to this Court upon the appeal until after our decision of June 23, 1957 had been rendered. The Act had not become effective under its terms when, on August 6, 1957, the Petition for Rehearing was filed. The main thrust of this Petition was that the dismissal without prejudice by the trial court should be affirmed so that appellants might have the opportunity to file a new action challenging, before a three-judge court, the constitutionality of the new statutes of Texas in keeping with the procedure they had taken in their original action.

At the April hearing which the court below fixed—and which, without jurisdiction, in my opinion, so to do, this Court has, in the majority opinion, cancelled—all questions raised by the pleadings would have been considered and passed upon. Included in these questions would have been the constitutionality of these statutes, assuming that appellants followed the procedure adopted in their original complaint in this case, of attacking the constitutionality of Texas school laws and praying that a three-judge court be conveyed to try the issue. That no power is vested in a single district judge or in us upon appeal from his ruling, to grant an injunction restraining the enforcement of a state statute on the ground that it violates the Constitution of the United States is made abundantly clear by a decision just rendered by the Supreme Court [5] reiterating its long established holding that such power is committed solely to a statutory court of three judges, 28 U.S.C.A. § 2281.

At all events, it is clear that the statutes have never been challenged before the court below or before us; and in the absence of such a challenge, jurisdiction has never been lodged in this Court to express any opinion concerning the constitutional validity or efficacy of such statutes. The Supreme Court has recently repeated principles long established which forbid a court from passing upon the constitutionality of a state statute unless called upon to do so in such a way that the question cannot be avoided, United States v. Raines, Feb. 29, 1960, 80 S.Ct. 519, 522:

"The very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them. This was made patent in the first case here exercising that power—'the gravest and most delicate duty that this Court is called upon to perform.' Marbury v. Madison, 1 Cranch. 137, 177–180, 2 L.Ed. 60. This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'"

The applicability of the Texas statutes to the case made by the pleadings can hardly be doubted and they ought, in my opinion, to be submitted, along with all the other questions involved, for an orderly hearing in due course, to the court below.

---

5. Florida Lime & Avocado Growers, Inc. v. Jacobsen, Director etc., March 7, 1960, 80 S.Ct. 568.

For the foregoing reasons, I respectfully dissent.

Rehearing denied: CAMERON, Circuit Judge, dissenting.